[Civ. No. 6829.   Fourth Dist.   Aug. 31, 1962.]

MELVIN E. FLORA et al., Plaintiffs and Respondents, v. THE AETNA CASUALTY & SURETY COMPANY, Defendant and Appellant.

Sims & Wallbert and Maurice H. Wallbert for Defendant and Appellant.

Saul Ruskin for Plaintiffs and Respondents.

SHEPARD, J.—This is an appeal by defendant Aetna Casualty and Surety Company, from a portion of a judgment against appellant and in favor of plaintiffs Melvin and Helen Flora. Defendant Joe Leonard, as general and special administrator of the estate of Ralph Chadwick Cornelius, abandons his appeal.

## FACTS

The facts are substantially uncontradicted. On January 16, 1958, the plaintiffs-respondents, Melvin and Helen Flora, entered into a building construction contract with Ralph Chadwick Cornelius for the construction of a 10-unit motel in Desert Hot Springs for $42,500. Mr. Cornelius started work on the project on January 20, 1958 and continued working until February 11, 1958, when he died.

Meanwhile, the Bank of America made a building loan to the respondents in January 1958. The bank requested a California contract bond (private work). On February 3, 1958, Mr. Flora first talked with Mr. Cornelius about a bond and then talked with N. H. Curtis, authorized representative of appellant Aetna Casualty and Surety Company. Mr. Curtis told respondents to have Cornelius come in and apply for the bond. On February 5, 1958, Mr. Curtis, as attorney in fact for appellant, and Mr. Cornelius as principal, executed a California contract bond (private work) pursuant to Code of Civil Procedure section 1181. Curtis gave the bond to Cornelius to give to respondents as Cornelius was going to Desert Hot Springs. The bond remained in Cornelius' possession until

his death, February 11, 1958. Around February 5, 1958, Cornelius told respondents the bond was taken care of. Shortly thereafter, respondents received in the mail a premium notice on the bond, dated February 6, 1958. On February 12, the day after Cornelius' death, respondents attempted to pay the premium but Mr. Curtis refused to take the money. He told respondents he had given the bond to Cornelius to take to respondents but that he would not take the money as they did not have the bond when Cornelius died. On the same day, February 12, 1958, plaintiffs obtained the bond from a close friend of the decedent, who had asked Mrs. Cornelius for it. The administrator did additional work under the contract, but failed to complete the agreement.

Thereafter, respondents contracted with another contractor, Ryan and Ryan, to complete the project. Subsequently, respondents brought this action against the representative of the estate of Cornelius, the original contractor, and appellant Aetna Casualty and Surety Company, to recover the excess costs of completing the project as well as certain funds which had been impounded by agreement of the parties. After trial without jury, judgment was rendered for respondents. On appeal, Aetna's main contention is that there is insufficient evidence that the bond upon which respondents' action is predicated was ever delivered; therefore it never became effective and appellant is not liable thereon.

### Delivery

As appellant points out, delivery is essential for the valid execution of the bond. (*Elsinore Union etc. School Dist.* v. *Kastorff*, 129 Cal.App.2d 60, 65 [3] [276 P.2d 112]; *San Francisco Sulphur Co.* v. *Aetna Indem. Co.*, 7 Cal.App. 98, 99 [1] [93 P. 888].) Civil Code section 1626 provides, "A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent."

Code of Civil Procedure section 1933 provides, "The execution of an instrument is the subscribing and delivering it, with or without affixing a seal."

Appellant correctly states that the principal on the bond, Mr. Cornelius the contractor, may act as the surety's agent for the purpose of delivery. Appellant forthrightly admits Cornelius had implied authority to deliver its surety bond. (72 C.J.S., Principal and Surety, § 55, p. 545; 50 Am. Jur. § 23, p. 918.)

Appellant's contention that the implied authority of Mr. Cornelius was revoked when he died, and that the bond never

became effective, is incorrect. ▮ Civil Code section 1059 provides:

"Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or,

"2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed."

Civil Code section 1059 applies to the contract in question, as Civil Code section 1627 provides: "The provisions of the chapter on transfers in general, concerning the delivery of grants, absolute and conditional, apply to all written contracts." (*Botsford* v. *Heney*, 12 Cal.App. 380, 382, 383 [5] [107 P. 593].) ▮▮ As stated in 72 Corpus Juris Secundum at page 545, section 55, ". . . The principal obligor may act as the agent of the surety for the purpose of making delivery, and such authority may be inferred from the facts and circumstances of the case, such as from the acts and conduct of the surety which fairly evince such an intention. As far as the surety is concerned, his liability on the bond or obligation becomes fixed by his delivering it to the principal, with the intention that it shall become operative, . . ."

▮ Delivery is a question of intent. ▮ The fact that appellant sent respondents the premium notice the day after they gave the bond to Cornelius to deliver to respondents and Cornelius told them the bond was taken care of, shows appellant made known its intention irrevocably to part with its dominion and control of the instrument. There is sufficient evidence to support the finding of delivery. (*Moore* v. *Trott*, 162 Cal. 268, 274-276 [3] [122 P. 462]; *Shnell* v. *Globe Indemnity Co.*, 42 Cal.App.2d 704, 709 [2] [109 P.2d 1018]; *Hill* v. *Industrial Acc. Com.*, 10 Cal.App.2d 178, 183-187 [1] [51 P.2d 1126]; *Haywood* v. *Townsend*, 4 App.Div. 246 [38 N.Y.S. 517, 519-520 [3]].)

## CHARGEABLE COSTS

Appellant contends that items totalling $732.33 were improperly included within the cost of the project and as items of damage awarded to respondents; that they were not for labor and materials, therefore they should not be chargeable to appellant on the bond. The items included plumbing

($392), accounting fee ($224.10) and minor attorney fees ($25), photos and prints and telephone charges for information and materials. Appellant cites one authority, *Growall* v. *Pacific Surety Co.*, 21 Cal.App. 185 [131 P. 73], but in that case the owner voluntarily and needlessly made payment in excess of what he was legally liable for. Attorney fees have been allowed on construction contract bonds where they were rendered in good faith and were reasonably and proximately caused by the breach of the construction contract. (*Tally* v. *Ganahl*, 151 Cal. 418, 423, 424 [3] [90 P. 1049]; *Bird* v. *American Surety Co.*, 175 Cal. 625, 631 [8] [166 P. 1009]; *Cohn* v. *Smith*, 37 Cal.App. 764, 767, 768 [3] [174 P. 682].)

These questioned items were paid by respondents out of an account set up in their bank. Said items were paid with the approval of the special administrator of the estate of Cornelius, who incurred these bills when he proceeded, in fulfillment of the contract, with the construction of the motel unit to put it under roof prior to the time Ryan & Ryan contracted to finish the job. (*Estate of Burke*, 198 Cal. 163, 167 [5-6] [244 P. 340, 44 A.L.R. 1341].) Appellant's brief states that exhibit (Plaintiff's No. 9) shows on its face that the questioned items were not for "labor and materials" and that the plumbing item was for "extra work." We cannot agree. The exhibit in question lists the plumbing item as "(part of contract)."

The court found that these services were rendered in compliance with and in fulfillment of the Cornelius contract. There is nothing to suggest that these items were outside the scope of the original contract and not necessitated by the failure of Cornelius to complete contract obligations. (*Roberts* v. *Security T. & S. Bank*, 196 Cal. 557, 567 [4-5] [238 P. 673].) ▮ The appellant has failed to state any evidence to the contrary and its brief does not make any appropriate reference to the record, as required by California Rules of Court, rule 15(a).* Thus, appellant has not established grounds for reversal. (*Miller* v. *Hassen*, 182 Cal.App.2d 370, 376, 377 [1-6] [6 Cal.Rptr. 202]; *Grand* v. *Griesinger*, 160 Cal.App.2d 397, 403 [1-4] [325 P.2d 475]; *Maurice L. Bein, Inc.* v. *Housing Authority*, 157 Cal.App.2d 670, 679 [1] [321 P.2d 753]).

The judgment is affirmed.

Griffin, P. J., concurred.

---

*Formerly Rules on Appeal, rule 15(a).