(No. 68868.—)

THE HANOVER INSURANCE COMPANY, Appellee, v.
WILLIE SMITH *et al.* (Joan Fried, Appellant).

*Opinion filed May 23, 1990.—Rehearing*
*denied October 1, 1990.*

Bernard Allen Fried, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Lawrence R. Moelmann and Kathryn A. Spalding, of counsel), for appellee.

JUSTICE CALVO delivered the opinion of the court:

Appellant, Joan Fried, appeals from a judgment of the Appellate Court, First District (182 Ill. App. 3d 793), awarding Hanover Insurance Company (Hanover) attorney fees, costs, and other expenses in the amount of $24,408.95 pursuant to an indemnity provision in a suretyship agreement by which Hanover agreed to act as surety for Joan Fried and two other litigants on an appeal bond and Fried agreed to post collateral and indemnify Hanover for any expenses it incurred as a consequence of the execution of the bond. The appellate court's majority opinion overturned a circuit court decision allowing Hanover only $9,200 of its claimed expenses. (182 Ill. App. 3d 793.) Fried petitioned this court for leave to appeal, challenging, as she did in the appel-

late court, Hanover's right to indemnification and the necessity of the expenses incurred. We allowed Fried's petition.

Having thoroughly reviewed the record on appeal, we wholeheartedly agree with the circuit court's assessment that this is "a classic case of litigation run amuck," in which a personal injury judgment worth little more than $15,000 has spawned four appeals with attendant costs and expenses for all concerned.

The genesis of this dispute was a personal injury action filed in 1975 by Willie Smith, naming as defendants Joan Fried, James Lewis and the Garden of Paradise Missionary Baptist Church (Church). All three defendants were represented by Bernard Fried. Smith ultimately prevailed, obtaining a judgment against Fried, Lewis and the Church in the amount of $15,000 plus costs.

Defendants chose to appeal, and to that end, Joan Fried entered into an agreement with Hanover whereby Hanover would act as surety on an appeal bond for Fried, Lewis and the Church, and Fried would post a letter of credit in the amount of $18,250 as collateral and agree to indemnify Hanover "for all loss, costs, attorney's fees and other expenses which [Hanover might] incur or sustain in consequence of the execution of said bond." The appeal bond, subsequently approved by the circuit court, was prepared solely by Bernard Fried, who then submitted it to Hanover for its signature; Hanover did not participate in the preparation of the bond or presentation thereof to the circuit court. The bond was submitted for court approval well beyond the time limitations of our Rule 305(a)(1) (107 Ill. 2d R. 305(a)(1)) and misidentified the year in which the judgment was entered. These defects notwithstanding, Smith did not object to the bond, nor did he collect the judgment during the pendency of the first appeal.

On June 30, 1981, the appellate court affirmed the judgment against Lewis and the Church, but reversed the judgment against Fried. (*Smith v. Fried* (1981), 98 Ill. App. 3d 467.) Hanover was thereafter beset with conflicting demands concerning payment: since the judgment as to Lewis and the Church had been affirmed, Smith demanded payment in accordance with the terms of the bond; Fried, however, instructed Hanover to deny Smith's claim for payment, contending that the bond was null and void because it was not issued in compliance with Supreme Court Rule 305(a)(1) (107 Ill. 2d R. 305(a)(1)).

In an attempt to resolve the dispute, Hanover, through an attorney retained by Fried, filed an action in the circuit court for declaratory judgment. Hanover's amended complaint alleged that the bond was "a nullity, void and of no effect." The complaint requested a declaration that the bond was a nullity and that Hanover was not liable thereunder. It was apparently around this time that Smith's attorney, Sheldon Gomberg, objected to Hanover's certification as a court-appointed surety in the annual qualifications proceedings before the court's surety division. Gomberg's objection was based upon Hanover's refusal to disburse payment pursuant to the terms of the bond.

Realizing that its interests did not necessarily coincide with Fried's, Hanover petitioned for leave to substitute counsel of its own choice and for leave to interplead the interested parties, deposit the penal amount of the bond with the clerk of the circuit court, and thereby discharge its obligation under the bond. Hanover requested "costs, expenses and attorneys' fees incurred in connection with [the] bond." By a letter dated July 22, 1982, Bernard Fried, acting "on behalf of [his] clients," advised Hanover that he would file suit against Hanover if Hanover paid any sums to Smith.

The circuit court, on July 27, 1982, ordered Hanover to pay the penal amount of the bond to Smith and his attorney, Sheldon Gomberg. In so ruling, the circuit court held the bond was "at all times a nullity insofar as it in no manner acted as a supersedeas bond on appeal," but the bond was, nonetheless, "the binding obligation" of Hanover. As Fried indicated she intended to appeal the ruling, the court set bond at $27,000 for any subsequent appeal, denied her request for leave to add $8,750 to the $18,250 already held by Hanover in order to satisfy the bond requirement, and stayed enforcement of the judgment until September 7, 1982. Evidently, no supersedeas was filed, because, on September 8, 1982, Hanover issued a check to Smith and Gomberg for $18,250, the penal sum of the original bond.

In the appeal which followed, the appellate court reversed (*Hanover Insurance Co. v. Smith* (1983), 118 Ill. App. 3d 1154 (unpublished order under Supreme Court Rule 23)), holding that Hanover was not liable to Smith and Gomberg because the appeal bond was not issued in compliance with Rules 305(a)(1) and (a)(2) and was, therefore, ineffectual. The court noted that Smith had "proceeded with his efforts to collect the judgment," despite the bond, "as evidenced by his Citation to Discover Assets mailed to Fried and Lewis in August 1980 directing them to appear in court on September 5, 1980, for examination as to the extent of their assets." The appellate court made no reference to Gomberg's unrefuted explanation of events during a July 23, 1982, circuit court hearing wherein Gomberg stated that he had indeed begun garnishment proceedings when attorney Fried telephoned, advising him that an appeal bond had been filed; whereafter, Gomberg abandoned his attempt to collect the judgment. The appellate court's omission of Gomberg's explanation is both significant and incomprehensible: significant, because it may well have altered the out-

come of the appeal; incomprehensible, because such an important piece of information could hardly have been overlooked by the court if indeed the relevant transcript was made part of the record on appeal.

In any event, following the appellate court's reversal, proceedings shifted, once again, to the circuit court where Hanover sought restitution from Smith. The court denied Hanover's motion for restitution and a third appeal followed, culminating in reversal of the circuit court. (*Hanover Insurance Co. v. Smith* (1985), 136 Ill. App. 3d 1155 (unpublished order under Supreme Court Rule 23).) On remand, the circuit court ordered restitution in the amount of $18,250 to Hanover.

Fried thereafter moved for return of the collateral from Hanover, and Hanover, in response, moved for fees and costs, contending that it was entitled to indemnity. The circuit court ordered the return of Fried's collateral less an offset to Hanover for fees and costs expended during litigation. Hanover was, however, awarded only $9,200 of the $24,408.95 it claimed.

In this regard, Hanover's position was vindicated in the ensuing appeal in which a majority of the appellate court held that the indemnification agreement was enforceable and that Hanover was entitled to full indemnification in the amount it had requested. (182 Ill. App. 3d at 796-97.) We affirm that judgment.

Fried contends that the indemnity provision in the suretyship agreement is unenforceable because the appeal bond executed as a result of that agreement was later ruled to be a nullity. Fried argues that the indemnity provision must necessarily fall with the appeal bond. Underlying Fried's position is the assumption that she received nothing of value by reason of Hanover's execution of the bond and is, therefore, not liable on her part of the bargain. Notwithstanding the result of the second appeal, we disagree. As the history of this case amply

demonstrates, by merely executing the bond, irrespective of whether it was later determined to be a nullity, Hanover exposed itself to potential liability and incurred substantial expenses in attempting to discharge its obligations to Fried and Smith.

As concerns liability, "[s]ureties generally are held liable on a supersedeas or appeal bond, although it was legally insufficient to effect a stay of proceedings, where as a matter of fact there was in effect a stay, no execution being issued, nor any attempt made to collect an execution if issued, or to enforce the judgment." (Annot., *Liability on supersedeas bond which was legally insufficient to effect stay, where enforcement of judgment was in fact suspended*, 120 A.L.R. 1062, 1062-63 (1939); see *Merritt v. J.A. Stafford Co.* (1968), 68 Cal. 2d 619, 624, 68 Cal. Rptr. 447, 450, 440 P.2d 927, 930; *U-M Investments v. Ray* (Utah 1985), 701 P.2d 1061, 1063.) Legal insufficiency or procedural error may be a basis for rejection of the bond by the party in whose favor it is executed, but does not of itself defeat an action against the surety or principal. Receipt by the obligors of the contemplated benefits of an appeal bond furnishes sufficient consideration for enforcement notwithstanding legal insufficiency (Restatement of Security §188 (1941); 120 A.L.R. at 1065), and will estop the obligors from denying their liability thereunder (31 C.J.S. *Estoppel* §110(4) (1964)). Long-standing decisions of this court have recognized that technical flaws in a bond do not necessarily negate "the valuable consideration of having the cause reviewed * * * and of delay to plaintiff in the execution of his decree" (*George v. Bischoff* (1873), 68 Ill. 236, 240) where plaintiff in fact relies upon the bond and defendant obtains the benefit thereof (*Mix v. People* (1877), 86 Ill. 329, 331; *Courson v. Browning* (1875), 78 Ill. 208, 210). In such an instance, one signing the appeal bond cannot later claim the bond is a nullity or question the

truth of recitals therein. (*Moses v. Royal Indemnity Co.* (1916), 276 Ill. 177, 180.) Yet, this is precisely what Fried has successfully done.

Although the point of the foregoing recitation of authority is to demonstrate that a litigant in Fried's position *does* benefit from the execution of a bond which has the effect of staying execution on the judgment, and that a surety, such as Hanover, incurs a detriment by undertaking obligations to both the principal and the obligee, thus establishing consideration (see generally *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320) to support the indemnity provision in this case, the cases previously cited, when considered with the facts in the record before us, compel us to question the appellate court's decision in the second appeal. We do not know what record or arguments were presented to that court, nor are we called upon to render our opinion as to the legal foundation of that decision, which, in any event, lacks precedential effect (107 Ill. 2d R. 23). However, neither will we allow Fried to hide behind that judgment and, in so doing, escape contractual liability.

It was either Fried's attorney's ineptitude or deception in the execution and handling of the bond which placed Hanover in the middle of this ongoing controversy, jeopardized Hanover's status as a court-appointed surety, and required the numerous expenditures which are the subject of this appeal. Hanover attempted, at all times, to discharge its obligations with dispatch and extricate itself from this quagmire of litigation, to no avail. It would truly be a miscarriage of justice to allow Fried to escape liability under the indemnity provision which requires Fried to reimburse Hanover for "all loss, costs, attorney's fees and other expenses" sustained "in consequence of the execution of [the] bond." This we refuse to do.

We have examined Hanover's claim for expenses and

find each category of expense presented therein to have been sustained "in consequence" of the execution of the appeal bond. Although the circuit court questioned whether certain expenditures—such as Hanover's defense of its status as a court-appointed surety—were "directly incurred as a result of the execution of the bond," we agree with the appellate court's determination that *all* of the claimed expenditures *were* reasonably incurred as a result of the execution of the bond. We further take issue with the circuit court's assessment that Hanover made questionable decisions in its handling of this litigation. Our view of the record reveals a litigant attempting at every juncture to fulfill its obligations as it saw them (and as we see them) and to extricate itself from litigation without incurring further liability or unnecessary expense. We find that Hanover adequately made its case for recovery of the claimed expenditures pursuant to the indemnity provision at issue.

For the reasons stated, the judgment of the appellate court is affirmed.

*Affirmed.*